IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
SAMBASIVA VENIGALLA,

                Plaintiff,

     -against-

LENOX TERRACE PHARMACY INC.,
RAJU L. MANTENA, BRAHMAJI VALIVETI,
RAJENDRA GOGINENI, SATISH GUNDA,
SHELLEY KURZWEIL and HERMAN KURZWEIL,
and JOHN DOES #1-4,

                Defendants.
------------------------------------------------------------------------X

Case Number 22 Civ.

**COMPLAINT**

**Jury Trial Demanded**

Plaintiff, SAMBASIVA VENIGALLA, by and through his attorneys, Brill Legal Group, P.C., for his Complaint against defendants LENOX TERRACE PHARMACY INC., RAJU L. MANTENA, BRAHMAJI VALIVETI, RAJENDRA GOGINENI, SATISH GUNDA, SHELLEY KURZWEIL and HERMAN KURZWEIL, alleges as follows:

## NATURE OF THE ACTION

1. When he traveled to India in 2019, Sambasiva "Sam" Venigalla did not expect to be kidnapped by local police officers, yet that is precisely what happened. It only got stranger from there.

2. The police officers approached Sam in an elevator of a building where he was about to enter a business meeting, a meeting whose location was known to Defendant Brahmaji Valiveti. The officers confiscated Sam's cell phone and brought him to a local police where he was brought to the office of a police Inspector. There, he was told that he would be allowed to go home to the United States after he signed certain documents.

–1–

3. When presented with those documents, Sam saw that they were settlement agreements which had apparently been drafted by Mantena and Valiveti's attorneys in New York for two pending lawsuits where he was the Plaintiff – one which was pending in the Indian courts, and one which was pending in New York State Supreme Court in Nassau County.[1]

4. When he was told to sign the documents, two individuals Sam knew to be associates of Defendant Brahmaji Valiveti were present at the police station. One of the individuals held up a cell phone and asked Sam if he wanted to speak to his former business partner and defendant in those lawsuits, Valiveti, who was apparently on the phone receiving a report of the kidnapping as it happened. Sam declined.

5. Fearing for his life, Sam signed the documents. When he was allowed to leave, some six or seven hours after he was kidnapped, police confiscated his passport and told him to return the next day to sign additional documents and receive copies of the documents he signed. The police returned him to his hotel. Again, fearing for his life, Sam frantically attempted to make contact with someone in India he could trust. The next day, with the assistance of a different high-ranking police official, he was able to secure the return of his cell phone and passport. He fled India soon thereafter, and has yet to return, as he fears for his safety if he does.

6. After returning to the United States, the Nassau County litigation continued until it was ultimately dismissed following a motion by defendants. However, during the discovery phase of that litigation, Sam discovered that the majority shareholders of one of the businesses Sam owned a portion of had apparently diverted millions of dollars in revenue from the sale of New York State Lottery products into accounts that had not been disclosed to him and had not

---

[1] Later in the New York litigation, Valiveti admitted to emailing the settlement agreements to associates in India.

appeared on the books of that business, Lenox Terrace Pharmacy Inc.

7. Lenox was (and is) a pharmacy in upper Manhattan that Sam and his partners purchased in 2002. Like many pharmacies, Lenox did a great deal of retail business in addition to dispensing drugs. In 2010, Sam sold his partners 38 of his 40 shares of Lenox, maintaining a two percent stake in the business until May 15, 2017, when he sold his remaining shares.

8. Shortly after Sam sold his 38 shares in 2010, Lenox apparently started selling lottery tickets. Sam was not aware of the lottery business at the time, was never informed of the lottery sales, and was never provided with details of Lenox's earnings from lottery sales.

9. It appears that Sam's former partners diverted the lottery proceeds from Lenox, failed to account for them, failed to pay taxes on them, and engaged in fraud against Lenox and Sam to cover up the diversion of these funds.

10. This lawsuit seeks to hold the Defendants accountable through the civil RICO statutes.

## PARTIES

11. Plaintiff, SAMBASIVA VENIGALLA ("Venigalla"), is a pharmacist and former shareholder of Defendant Lenox Terrace Pharmacy Inc..

12. Defendant LENOX TERRACE PHARMACY INC. ("Lenox") is a New York State domestic corporation with its principal place of business in New York, New York. It provides pharmacy, retail, and New York State Lottery services.

13. Defendant RAJU L. MANTENA ("Mantena"), at all times relevant hereto, was and is a shareholder of Lenox.

14. Defendant BRAHMAJI VALIVETI ("Valiveti"), at all times relevant hereto, was

and is a shareholder of Lenox.

15. Defendant RAJENDRA GOGINENI ("Gogineni"), at all times relevant hereto, was listed as the lottery sales manager for Lenox.

16. Defendant SATISH GUNDA ("Gunda"), at all times relevant hereto, was a pharmacist employed by Lenox and a signatory listed on Lenox's bank accounts.

17. Defendant SHELLEY KURZWEIL ("Ms. Kurzweil"), at all times relevant hereto, was the 100% owner of Andrea Drug Inc, the corporation that owned the pharmacy prior to Lenox.

18. Defendant HERMN KURZWEIL ("Mr. Kurzweil"), at all times relevant hereto, was the signatory to a JP Morgan Chase bank account held by Andrea Drug Inc. where proceeds from sales of New York State Lottery products were deposited.

19. Defendants John Does # 1-4 are individuals who engaged in the kidnapping and extortion of Plaintiff in 2019.

## JURISDICTION AND VENUE

20. This Court has subject matter jurisdiction herein pursuant to 18 U.S.C. § 1964.

21. Venue is proper in this judicial district pursuant to 18 U.S.C. § 1965 and 28 U.S.C. § 1391(b)(2) as the events in question occurred in this District.

## JURY DEMAND

22. Plaintiff demands a trial by jury.

**FACTUAL ALLEGATIONS**

23. Plaintiff, a pharmacist, purchased and ran a number of different pharmacies in the New York metropolitan area with Defendants Mantena and Valiveti from the late 1990s to the late 2010s. These pharmacies were owned through different corporations. The percentage ownership of each shareholder in each corporation varied. For example, Venigalla and Valiveti were each fifty percent shareholders in two other pharmacy corporations. Mantena, Valiveti and Venigalla were only partners in Lenox.

24. On July 1, 2002, Venigalla, Mantena and Valiveti purchased a pharmacy from Shelley Kurzweil, owner of Andrea Drug Inc. They renamed that pharmacy Lenox Terrace Pharmacy Inc. Of 100 shares issued by Lenox, Venigalla owned 40.

25. Lenox Terrace Pharmacy Inc., through its various business models, including the sale of drugs and retail items purchased from outside of New York State, was routinely engaged in interstate commerce.

26. Due to his duties at two other pharmacies, among other reasons, Venigalla did not take part in the day-to-day operations of Lenox.

27. Andrea Drug Inc. had received a New York State Lottery license in 1993, but that license did not transfer to Lenox. Lenox did not sell lottery tickets from its inception in 2002 until July 20, 2010.

28. On July 7, 2010, Venigalla sold 38 of his 40 shares in Lenox to his partners.

29. Andrea Drug Inc. was dissolved on July 10, 2010 by its shareholders.

30. Lenox began selling lottery tickets on July 20, 2010 using the New York State Lottery license issued to Andrea Drug Inc. Sales under the Andrea Drug Inc. license continued

–5–

until on or about October 4, 2018, except for a six month period from August 2011 to February 2012 when the license was suspended by the state following the sale of lottery tickets to minors.

31. Proceeds from the lottery sales by Lenox were diverted from accounts in Lenox's name. Proceeds from other sales at Lenox were deposited into a Chase bank account under the name Andrea Drug Inc. Those funds were then used to pay for the lottery tickets sold. Commissions from the lottery sales were then deposited by Lenox into the Andrea Drug Inc. Chase account and transferred to account(s) held by Lenox or its shareholders. Venigalla had no access to the Andrea Drug Inc. Chase account at any time.

32. Upon information and belief, the use of the Andrea Drug Inc. lottery license and bank account was with the full knowledge, authority and consent of Mr. and Mrs. Kurzweil. From 2010 to 2018, Mr. Kurzweil routinely and repeatedly signed checks, authorized checks to be signed in his name and/or authorized fraudulent wire transfers from Andrea Drug Inc. to Lenox for lottery sales commissions. These acts constitute a pattern of racketeering by Mr. and Mrs. Kurzweil that affected Lenox, an enterprise engaged in interstate commerce, and were continuous throughout the time period alleged.

33. On May 15, 2017, Venigalla sold his remaining two shares of Lenox to Lenox Terrace Pharmacy Inc..

34. From 2010 to 2018, the books and records of Lenox do not reflect the total lottery sales under the Andrea Drug Inc. name. Income rightfully belonging to Lenox and its shareholders was fraudulently conveyed to individuals via U.S. Mail and/or wire in violation of state and federal law. As such, neither Lenox nor its owners paid state or federal taxes on this income. False and fraudulent statements were made to New York State and the federal

government via U.S. Mail and/or wire as to the actual income of Lenox. Mantena and Valiveti wrongfully profited from the false and fraudulent statements made by them and/or on their behalf and with their knowledge to both state and federal government entities as to the actual income of Lenox. These acts constitute a pattern of racketeering by Mantena and Valiveti that affected Lenox, an enterprise engaged in interstate commerce, and were continuous throughout the time period alleged.

35. As mentioned above, Venigalla was the Plaintiff in separate litigation against defendants Mantena and Valiveti in New York State Supreme Court, Nassau County. Following Venigalla's filing of that action, Lenox stopped selling lottery tickets in June 2018 under the Andrea Drug Inc. account.

36. Proceeds from the sale of lottery tickets from 2010 to 2018 exceeded $5,000,000. Lenox's commission on those sales exceeded $300,000. Defendant Gogineni was directly responsible for handling the fraudulent lottery sales for Lenox.

37. Plaintiff, as a shareholder of Lenox, was entitled to his share of the actual profits of Lenox, including all profits that were fraudulently diverted from Lenox. Plaintiff relied on Mantena and Valiveti's false representations of the financial condition of Lenox to his detriment.

38. In October 2018, Lenox attempted to apply for a New York State lottery license under its own name, listing Mantena and Valiveti as shareholders. That application, which was transmitted by U.S. Mail and/or wire, falsely stated that Lenox was taking over a supermarket and Lotto business. In reality, Lenox had been operating that business under its own name since 2002. New York State rejected that application.

39. In April 2019, Defendant Gunda filed a new application for Lenox, forging

–7–

Valiveti's signature on the application. This application, which was sent to New York State via U.S. Mail and/or wire, falsely listed Valiveti as the sole shareholder of Lenox, and repeated the false claim that Lenox was taking over a supermarket and Lotto business.

40. In 2019, Valiveti arranged, through relatives and connections in India, for Venigalla's kidnapping and extortion. Valiveti's purpose in doing so was to coerce Venigalla into settling ongoing disputes over businesses he and Venigalla owned, and to ensure that Venigalla would not discover his fraudulent actions at Lenox, as detailed above. Individuals who Mr. Venigalla knew to be associates of Valiveti were present throughout the kidnapping in India.

41. Venigalla reported his experience in India to the FBI and the United States Attorney's Office upon his return to the United States. Upon information and belief, that investigation remains open.

## COUNT I
## RICO Section 1962(c)

42. The allegations of paragraphs 1 through 41 are incorporated herein by reference.

43. This Count is against Defendant(s) RAJU L. MANTENA, BRAHMAJI VALIVETI, RAJENDRA GOGINENI, SATISH GUNDA and JOHN DOES # 1-4 (the "Count I Defendants").

44. Lenox Terrace Pharmacy Inc. is an enterprise engaged in and whose activities affect interstate commerce. The Count I Defendants are employed by or associated with the enterprise.

45. The Count I Defendants agreed to and did conduct and participate in the conduct of the enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding Plaintiff, as outlined above.

46.     Pursuant to and in furtherance of their fraudulent scheme, the Count I Defendants committed multiple related acts of mail and wire fraud, as outlined above.

47.     The acts of mail and wire fraud set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

48.     The Count I Defendant(s) have directly and indirectly conducted and participated in the conduct of the enterprise's affairs through the pattern of racketeering and activity described above, in violation of 18 U.S.C. § 1962(c).

49.     As a direct and proximate result of the Count I Defendants' racketeering activities and violations of 18 U.S.C. § 1962(c), Plaintiff has been injured in his business and property in that the profits of the corporation to which he was entitled were fraudulently diverted, and he was caused to be kidnapped and extorted while in India to intimidate and silence him.

50.     As such, Plaintiff requests that this Court enter judgment against the Count I Defendants as follows:

    a.  Actual damages according to Plaintiff's share of actual profits due to him based upon his percentage of ownership in Lenox at the various times of Defendants' fraud;

    b.  Treble damages as per statute; and

    c.  Reasonable attorney's fees and costs.

## COUNT II
## RICO Section 1962(c)

51. The allegations of paragraphs 1 through 50 are incorporated herein by reference.

52. This Count is against Defendant(s) SHELLEY KURZWEIL and HERMAN KURZWEIL (the "Count II Defendants").

53. Andrea Drug Inc. was an enterprise engaged in and whose activities affected interstate commerce. The Count II Defendants were employed by or associated with the enterprise.

54. The Count II Defendants agreed to and did conduct and participate in the conduct of the enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding Plaintiff, as outlined above.

55. Pursuant to and in furtherance of their fraudulent scheme, the Count II Defendants committed multiple related acts of mail and wire fraud, as outlined above.

56. The acts of mail and wire fraud set forth above constituted a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

57. The Count II Defendant(s) have directly and indirectly conducted and participated in the conduct of the enterprise's affairs through the pattern of racketeering and activity described above, in violation of 18 U.S.C. § 1962(c).

58. As a direct and proximate result of the Count II Defendants' racketeering activities and violations of 18 U.S.C. § 1962(c), Plaintiff has been injured in his business and property in that the profits of Lenox to which he was entitled were fraudulently diverted and laundered through Andrea Drug Inc.

59. As such, Plaintiff requests that this Court enter judgment against the Count II Defendants as follows:

    a. Actual damages according to Plaintiff's share of actual profits due to him based upon his percentage of ownership in Lenox at the various times of Defendants' fraud;

    b. Treble damages as per statute; and

    c. Reasonable attorney's fees and costs.

## COUNT III
## RICO Section 1962(d)

60. The allegations of paragraphs 1 through 59 are incorporated herein by reference.

61. This count is against all Defendants.

62. As set forth above, Defendants each agreed and conspired to violate 18 U.S.C. § 1962(c).

63. Defendants have intentionally conspired and agreed to directly and indirectly conduct and participate in the conduct of the affairs of two enterprises through a pattern of racketeering activity. Defendants knew that their predicate acts were part of a pattern of racketeering activity and agreed to the commission of those acts to further the schemes described above. That conduct constitutes a conspiracy to violate 18 U.S.C. § 1962(c), in violation of 18 U.S.C. § 1962(d).

64. As direct and proximate result of Defendants' conspiracy, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C. § 1962(d), Plaintiff has been injured in his business and property in that the profits of the corporation to which he was entitled were fraudulently diverted, he was caused to be kidnapped and extorted while in India to intimidate

and silence him, and the profits of Lenox to which he was entitled were fraudulently diverted and laundered through Andrea Drug Inc.

65. As such, Plaintiff requests that this Court enter judgment against Defendants as follows:

    a. Actual damages according to Plaintiff's share of actual profits due to him based upon his percentage of ownership in Lenox at the various times of Defendants' fraud;

    b. Treble damages as per statute; and

    c. Reasonable attorney's fees and costs.

WHEREFORE, Plaintiff demands judgement against Defendants as outlined above and for such other, further and different relief as this Court deems just and proper.

Dated: February 24, 2022

BRILL LEGAL GROUP, P.C.
*Attorneys for the Plaintiff*

By: Peter E. Brill
306 Fifth Avenue
Penthouse
New York, NY 10001
(212) 233-4141