**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**Sambasiva Venigalla,**

                                          **Plaintiff**   **Case No. 22-cv-1569-LAK**

**v.**

**Shelley Kurzweil and Herman Kurzweil,**       **PLAINTIFF SAMBASIVA**
                                                **VENIGALLA'S RESPONSE TO**
                                       **Defendants.**   **DEFENDANTS' MOTION TO DISMISS**

---

**PLAINTIFF SAMBASIVA VENIGALLA'S RESPONSE**
**TO DEFENDANTS' MOTION TO DISMISS**

---

I.      Contents

II.   Introduction ........................................................................................................... 1

III.  Summary of Facts .................................................................................................. 2

IV.  Mr. Venigalla's Claims Against the Kurzweils Were Not Litigated in State Court and are Not Subject to Claim Preclusion (*res judicata*) or Issue Preclusion .................................... 2

    A.    Res Judicata/Claim Preclusion ..................................................................... 2

    B.    Issue Preclusion ............................................................................................. 4

V.    This Case Was Timely Filed .................................................................................. 5

VI.  Mr. Venigalla Has Standing to Bring a RICO Claim Because He was Directly Injured by the RICO Violations ........................................................................................................ 6

    A.    The Elements of Standing are Met ................................................................ 6

    B.    The FAC Alleges Mr. Venigalla was the Target of the Scheme and was Injured ........... 7

    C.    The Claim is Direct Belonging to Mr. Venigalla .......................................... 8

    D.    Mr. Venigalla has a Direct Claim as a Former Shareholder .......................... 9

VII. The FAC Alleges a Proper RICO Enterprise ....................................................... 10

VIII.      Alternatively, No RICO Enterprise is Required ............................................. 12

IX.  The FAC is Subject to the Fed. R. Civ. P. 8, not Rule 9(b) Pleading Standard .................... 12

X.    Conclusion ............................................................................................................ 13

# TABLE OF AUTHORITIES

**Cases**

Basich v. Galina,
  346 F.3d 366, 375 (2d Cir. 2003)..................................................................................... 8

Bernstein v.Somekh,
  452 F. Supp. 1373, 1374 (S.D.N.Y. 1978) ..................................................................... 10

Bibbo v. Arvanitakis, ....................................................................................................................
  145 A.D.3d 657, 660, 44 N.Y.S.3d 448, 451–52 (2016) ................................................. 9

Boyle v. United States,
  556 U.S. 938, 944, 129 S. Ct. 2237, 2243, 173 L. Ed. 2d 1265 (2009).................................... 10

Cayuga Nation v. Tanner,
   6 F.4th 361, 374 (2d Cir. 2021) ...................................................................................... 4

City of New York v. Khashman,
  No. 15CIV5089AMDST, 2017 WL 325250 (E.D.N.Y. Jan. 20, 2017) ................................. 10

City of New York v. Tavares,
  No. 15CV5089AMDST, 2016 WL 7912006, at *4 (E.D.N.Y. Dec. 23, 2016)....................... 10

Cohen v. S.A.C. Trading Corp.,
  711 F.3d 353, 361 (2d Cir. 2013)..................................................................................... 5

Cullen v. Paine Webber Group, Inc.,
  689 F. Supp. 269, 278 n. 12 (S.D.N.Y. 1988).................................................................. 3

D. Penguin Bros. Ltd. v. City National Bank,
  587 Fed. Appx. 663, 667-68 (2d Cir. 2014)....................................................... 11, 12

DeFalco v. Bernas,
  244 F.3d 286, 306 (2d Cir. 2001)................................................................................... 10

Ghartey v. St. John's Queens Hosp.,
  869 F.2d 160, 162 (2d Cir. 1989)..................................................................................... 6

Google LLC v. Starovikov,
  No. 1:21-CV-10260-DLC, 2021 WL 6754263, at *3 (S.D.N.Y. Dec. 16, 2021).................... 11

Hecht v. Com. Clearing House, Inc.,
  897 F.2d 21, 23 (2d Cir. 1990)......................................................................................... 7

Irish Lesbian & Gay Org. v. Giuliani,
  143 F.3d 638, 644 (2d Cir. 1998)..................................................................................... 3

Kim v, Kimm,
  884 F.3d 98, 103 (2d Cir. 2018)....................................................................................... 8

Mayfield v. Asia Funding, Inc.,
  95 F. Supp 3d 685, 699-700 (S.D.N.Y. 2015) ............................................................... 11

Murphy v. Gallagher,
  761 F.2d 878, 879 (2d Cir. 1985)..................................................................................... 4

New York Dist. Council of Carpenters Pension Fund v. Forde,
  939 F. Supp. 2d 268, 283 (S.D.N.Y. 2013)................................................................... 12

Postlewaite v. McGraw-Hill,

333 F.3d 42, 49 (2d Cir. 2003)...........................................................................................4

Serino v. Lipper,
   123 A.D.3d 34, 40, 994 N.Y.S.2d 64, 69 (2014) .....................................................9

TechnoMarine SA v. Giftports, Inc.,
   758 F.3d 493, 499 (2d Cir. 2014)...........................................................................3

United States v. Applins,
   637 F.3d 59, 75 (2d Cir. 2011)...............................................................................12

Vincel v. White Motor Corp.,
   521 F.2d 1113, 1119 (2d Cir. 1975)........................................................................9

**Statutes**

18 U.S.C. §1961(4) ............................................................................................... 10
18 U.S.C. §1962(c) ............................................................................................... 7
18 U.S.C. §1962(d) ............................................................................................... 12
18 U.S.C. §2314 .................................................................................................... 7, 12

**Rules**

Fed. R. Civ. P. 8 ................................................................................................... 12
Fed. R. Civ. P. 9(b) .............................................................................................. 2, 12

Plaintiff, Sambasiva Venigalla, by undersigned counsel, responds to defendants Shelley and Herman Kurzweil's (collectively, the "Kurzweils" or "Defendants") Motion to Dismiss (the "Motion") the First Amended Complaint ("FAC")[1] as follows:

## II.    Introduction

This case is brought because Mr. Venigalla was deprived of his rightful share of money earned by Lenox Terrace Pharmacy ("Lenox"), of which he was a shareholder.[2]  Lenox illegally earned millions of dollars over seven years by selling lottery tickets without a license.  It used the license of a different pharmacy, Andrea Drug Inc., whose owners, the defendants, conspired with Lenox's owners to conceal the proceeds from Lenox's shareholders.  Defendants' assertion that this as a "fraud claim masquerading as a RICO violation[]" is incorrect.  Motion at p. 1.  This is a RICO[3] case because the racketeering activity went on for years, repeatedly damaged Mr. Venigalla, as well as other victims, and was committed through an enterprise.  (And it must be pointed out that the predicate acts are theft, not fraud.)

The Motion posits many arguments for dismissal.  The first of these is the affirmative defense of *res judicata* because there was a prior state court case against different defendants, brought before the involvement of the Kurzweils was known.  But for *res judicata* to apply this case has to be brought against the same parties that were sued in the prior action or their "privies."  And the Motion cites no authority for the proposition that the Kurzweils were in privity with the state court defendants.  All the Motion contends is that "privity can be found in the context of an employer/employee relationship."  Motion at p. 13.  But there is no allegation that the Kurzweils were employees of the defendants in the state court case.  And the FAC makes

---

[1] *See* Docket No. 51.
[2] He sold his shares in 2017.
[3] The Racketeer Influenced and Corrupt Organizations Act, codified at 18 U.S.C. §1961-1968.

it clear that they were the owners of a different entity, Andrea Drug Inc. Therefore, Mr. Venigalla is not precluded from bringing this case.

The Motion makes other arguments for dismissal of the RICO claim: that it is untimely; that the claim belongs to Lenox; that the RICO enterprise lacks a "common purpose"; and that the claim does not meet the heightened pleading standard of Fed. R. Civ. P. 9(b). All of these arguments are unfounded and incorrect.

### III.    Summary of Facts

Mr. Venigalla brings this suit to remedy a seven-year scheme to cheat him of money to which he was entitled as a stockholder in Lenox. Succinctly stated, Lenox earned $4 million from the sale of New York State lottery tickets from 2010 to 2017. FAC at ¶13. During this period, Venigalla was a shareholder of Lenox but did not receive his share of this money. FAC at ¶¶14, 26. This occurred because the owners of Lenox illegally sold the lottery tickets using the license of a different pharmacy, Andrea Drug, owned and operated by Defendants. *Id*. at ¶12-14. The Kurzweils received this $4 million. *Id*. at ¶20. They then transferred the money to their co-conspirators at Lenox who kept it off the books, thereby cheating Venigalla and the other owners of their rightful share of the proceeds. The Kurzweils received kickbacks for their role in the scheme. *Id*. ¶22.[4]

### IV.    Mr. Venigalla's Claims Against the Kurzweils Were Not Litigated in State Court and are Not Subject to Claim Preclusion (*res judicata*) or Issue Preclusion

#### A.    Res Judicata/Claim Preclusion

---

[4] The Motion asserts incorrectly that the damages in this case are only $4800.00. Motion at 6, n.2. This view is based on the assumption that the damages are a portion of lottery sales commissions. Mr. Venigalla disagrees. The Amended Complaint alleges damages of $225,000 predicated on the theft of Mr. Venigala's share of $4 million. Amended Complaint, para. 4. To cover the stolen lottery sales cash Lenox transferred money from the pharmacy sales revenue to the state for the lottery tickets sold.

The Kurzweils were not parties to the prior state court action. This typically forecloses application of the doctrine of claim preclusion (also known as *res judicata*).[5] It only applies to claims between the same parties "or their privies." *See, e.g.,* <u>In re Teltronics Servs, Inc.</u>, 762 F.2d 185, 189 (2d Cir. 1985)( "Thus, this doctrine applies to preclude later litigation if the earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action"); <u>Irish Lesbian & Gay Org. v. Giuliani</u>, 143 F.3d 638, 644 (2d Cir. 1998)( "Res judicata bars litigation of any claim for relief that was available in a prior suit between the same parties or their privies, whether or not the claim was actually litigated.").

Thus, the doctrine can only apply if the Kurzweils are "privies" of the defendants from the state court case. And all the Motion says on that score is that "The Kurzweils were the prior owners of Lenox Pharmacy, which was sold to Plaintiff, Valiveti and Mantena". Motion at p. 14. The Motion does not argue, much less cite, any authority for the proposition that being a prior owner of the pharmacy, a fact which is not alleged in the FAC and is not before the Court, would make the Kurzweils "privies" of the state court defendants.

Rather, the Motion argues that "Privity can be found in the context of an employer/employee relationship." Motion at p. 13.[6] This argument is in reference to former defendants Gogineni and Gunda ("Defendants Gogineni and Gunda were acting within their scope of employment in connection with the current matter." Motion at 14.[7]) Thus, there is no

---

[5] *See e.g.,* <u>TechnoMarine SA v. Giftports, Inc.</u>, 758 F.3d 493, 499 (2d Cir. 2014).

[6] The Motion to some extent relies upon New York decisions interpreting claim preclusion and issue preclusion. This is incorrect. Since this is a federal question case "the federal court's rule of res judicata governs." <u>Cullen v. Paine Webber Group, Inc.</u>, 689 F. Supp. 269, 278 n. 12 (S.D.N.Y. 1988), quoting <u>Blonder Tongue Laboratories Inc. v. University of Illinois Foundation</u>, 402 U.S. 313, 324 n. 12 (1971).

[7] On September 19, 2022, the Court entered an order dismissing Mr. Gogineni and Mr. Gunda from this case with prejudice. *See* Docket No. 60.

authority cited for the argument that the claims against the Kurzweils are precluded by *res judicata*/claim preclusion. This argument must be rejected.

B.    **Issue Preclusion**

The Motion additionally argues that this case should be subject to the doctrine of collateral estoppel/issue preclusion[8]. *See* Motion at pp. 9-14. This doctrine requires that the "identical issue" was decided in the prior case. *See, e.g.,* Cayuga Nation v. Tanner, 6 F.4th 361, 374 (2d Cir. 2021), cert. denied, 142 S. Ct. 775 (2022)( "A party may invoke issue preclusion only if: "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party [raising the issue] had a full and fair opportunity to litigate the issue [in the prior proceeding]; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits."). Moreover, T]he party asserting preclusion bears the burden of showing *with clarity and certainty* what was determined by the prior judgment," and "[i]ssue preclusion will apply only if it is *quite clear* that this requirement has been met. Postlewaite v. McGraw-Hill, 333 F.3d 42, 49 (2d Cir. 2003).

In the state court case Mr. Venigalla primarily alleged fraud: that he was fraudulently induced to sell his shares in Lenox Terrace Pharmacy in 2017 for a substantially lower price than he would otherwise have obtained due to the state court defendants' failure to disclose the revenues from the lottery ticket sales. Motion Ex. R, p. 2 (listing the causes of action). In granting the defendants summary judgment the state court concluded: "Plaintiff has not identified any misrepresentation of a material fact in connection with the 2017 agreement… Plaintiff has failed to meet the heightened standards of Rule 3016 with respect to claims of fraud." *Id*. at p.6.

---

[8] Issue preclusion is also known as collateral estoppel. Murphy v. Gallagher, 761 F.2d 878, 879 (2d Cir. 1985).

This case does not allege fraud. Rather, it alleges that the Kurzweils conspired to commit the theft of money: lottery ticket sales. FAC at ¶¶15, 21, 25. They stole and transferred this money at least 100 times during a seven-year period. *Id*. at ¶25. Accordingly, Defendants have failed to meet their burden of proving that what was *actually* decided, the absence of fraud, is "identical" to the issue in the instant case: theft of money that belonged to Mr. Venigalla.

The contention that "the only thing Plaintiff changes, in an effort to distinguish the current RICO claims from the fraud claims already decided against him in the State Court Action, is that now he claims the diversion of revenue was at the hands of Defendants rather than the State Court Defendants" [Motion at p.11], is wrong. The cause of action in this case is different; the facts supporting it are different and do not require the heightened showing of fraud; and the state court did not decide anything regarding a "diversion."

The weakness of the Defendants' argument is underscored by their failure to cite a similar decision in which a court has found issue preclusion. Accordingly, since they have failed to meet their burden of showing with clarity that the issue in this case was decided by the state court, the argument for issue preclusion must be rejected.

## V.    This Case Was Timely Filed

Mr. Venigalla filed this case in February 2022. He filed his state court case in May 2018. In the state court complaint, he alleged that he learned of the diversion of lottery monies "subsequent to the May 2017 sale." Motion, Ex. A, p. 3 ¶12.[9]    Therefore, the FAC does not allege the date upon which Mr. Venigalla learned, or should have learned, of his injury. This is the time when a RICO claim typically accrues. Cohen v. S.A.C. Trading Corp., 711 F.3d 353, 361 (2d Cir. 2013). Accordingly, there is no basis to dismiss the case based on the affirmative defense of the statute of limitations at this time. *See, e.g.,* Ghartey v. St. John's Queens Hosp.,

---

[9] The FAC made the same statement. Ex. B, p. ¶19.

869 F.2d 160, 162 (2d Cir. 1989) ("Where the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss").

The Motion contends Venigalla "would have had such information [putting him on notice of his RICO claim] dating back to May 2017 or earlier." Motion at p.16. This argument is made based upon Mr. Venigalla's receipt of bank statements and K-1 tax forms as a Lenox shareholder. *Id*. at pp. 15-16. The only authority cited in support of the argument that Mr. Venigalla was on inquiry notice of his claim in 2017 is 2022 WL 602711 <u>Bai v. Tegs Mgmt., LLC</u>, No. 20CV4942 (DLC), 2022 WL 602711 (S.D.N.Y. Mar. 1, 2022), which was dismissed due to the statute of limitations but on a dissimilar factual basis. It does not support the argument that Mr. Venigalla was on inquiry notice of his claim, and the Motion does not highlight how its facts support this argument.

Moreover, Mr. Venigalla disputes that the bank statements he received put him on notice that anything was amiss with the corporation's finances because the bank statements did not reflect which deposits were made in cash, the large sums of which later caused him to inquire further. As such, the argument that Mr. Venigalla was on inquiry notice of his claim is disputed and cannot be resolved on this record by a motion to dismiss.

**VI. Mr. Venigalla Has Standing to Bring a RICO Claim Because He was Directly Injured by the RICO Violations**

    **A. The Elements of Standing are Met**

The Defendants make three arguments to support their contention that Mr. Venigalla lacks standing to assert his RICO claim. *See* Motion pp. 16-19. They allege that Mr. Venigalla was not the "intended target of the RICO violations" [*See Id.* at pp.17-18]; that the claim belongs

to the corporation, [*See Id.* at p.18]; and that there are insufficient allegations to "establish causation of the injury by the defendant's violation" [*Id.* at p.19].

The elements of standing under RICO are "(1) a violation of section 1962; (2) injury to business or property; and (3) causation of the injury by the violation." Hecht v. Com. Clearing House, Inc., 897 F.2d 21, 23 (2d Cir. 1990).

Here, the violations are the repeated thefts of money, some of which belonged to Mr. Venigalla. This violated 18 U.S.C. §2314, a RICO predicate offense which, in turn violates 18 U.S.C. §1962(c).[10] Thus, the first part of the standing analysis is satisfied. The motion does not challenge the second element, that the theft of money is "business or property." As for the third part, causation, it contends the allegations are "non-specific." Motion at p. 19. But Defendants fail to identify any claim that is insufficient to allege that Mr. Venigalla's injury was caused by the theft of money to which he was entitled. The lack of causation is not shown. Therefore, this argument must be rejected.

### B.    The FAC Alleges Mr. Venigalla was the Target of the Scheme and was Injured

The Defendants argue that the FAC pleads that *Lenox*, and not Mr. Venigalla, is the true "target" of the RICO scheme. *See* Motion at pp.18-19. But a review of the FAC's relevant allegations shows otherwise. The FAC pleads that Lenox "earned and received $4 million in proceeds from the lottery ticket sales, Plaintiff never received his share of the revenue…" FAC at ¶14. It also states that "Each transfer of stolen money injured Venigalla and the other two owners of Lenox Terrace Pharmacy as they did not receive their rightful share of the profits."

---

[10] "It shall be unlawful for any person employed or associated with any enterprise engaged in… interstate of foreign commerce, to conduct or participate… in the conduct of such enterprise's affairs through a pattern of racketeering activity…"

FAC at ¶26.  It further states "Lenox Pharmacy was not damaged; Plaintiff was damaged."  FAC at ¶34.  Thus, the FAC describes an injury to Mr. Venigalla and not to Lenox.

The Motion simply ignores all of these allegations and points to one sentence which states: "All four Defendants knew the funds actually belonged to Lenox Terrace before they were transferred to Gogineni and Gunda."  FAC at ¶22.  This merely states that Lenox received the funds before they were stolen.  Since the corporation actually received the money, it cannot be argued that the money was taken it was received.  Rather, the corporation is properly seen as the perpetrator of the scheme against Mr. Venigalla.  And to the extent there is any confusion with the other allegations at ¶¶14, 26 and 34, which clearly allege Mr. Venigalla was injured, and the corporation was not injured, the Court is to "draw all reasonable inferences in the Plaintiff's favor."  Kim v, Kimm, 884 F.3d 98, 103 (2d Cir. 2018).

While it is certainly correct that a RICO plaintiff must ordinarily be the target of the RICO violations as the Motion contends, that is exactly what the FAC alleges.  Additonally, there can be more than one target.  Basich v. Galina, 346 F.3d 366, 375 (2d Cir. 2003).

As stated above, Mr. Venigalla's injury was caused by the RICO violations, the theft of lottery ticket revenue to which he was entitled as a shareholder of the corporation.  The FAC clearly alleges damages caused to Mr. Venigalla, thus conferring standing.

C.    The Claim is Direct Belonging to Mr. Venigalla

The Motion contends the claim belongs to the corporation, i.e., is derivative.  Motion at pp.18, 24-25. This is incorrect.

> In order to distinguish a derivative claim from a direct one, the court considers (1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders individually)" If there is any harm caused to the

individual, as opposed to the corporation, then the individual may
proceed with a direct action.

Serino v. Lipper, 123 A.D.3d 34, 40, 994 N.Y.S.2d 64, 69 (2014)(internal citations and

quotations omitted).

In applying this test, the answer to the first question is Mr. Venigalla.  As stated, he

alleges injury.  He does not allege injury to the corporation.  Secondly, the recovery would go to

Mr. Venigalla for the same reason as he has been damaged.  Moreover, even if the FAC is

construed as the Motion believes it should be, and the corporation had a recovery, Mr. Venigalla

would still have a separate recovery.  And "if there is any harm caused to the individual, as

opposed to the corporation, then the individual may proceed with a direct action."  *Id.*  *See also,*

Bibbo v. Arvanitakis, 145 A.D.3d 657, 660, 44 N.Y.S.3d 448, 451–52 (2016)("An individual

action may be maintained where the injury alleged is to the plaintiff and recovery would go to

the plaintiff," finding the claim belonged to the individual).

### D.    Mr. Venigalla has a Direct Claim as a Former Shareholder

Even without the foregoing analysis the Second Circuit recognizes exceptions to the rule

that a shareholder cannot bring a claim which belongs to the corporation.  One exception applies

to former shareholders, who would not stand to obtain relief from an action by or on behalf of

the corporation.

> There are also situations in which an action by or on behalf of the
> corporation provides no remedy to an injured shareholder. This
> occurs, for example, in a "freeze out" operation when directors
> purposely carry on the business of a corporation so as to reduce the
> value of the corporate stock. A plaintiff, having then sold at a
> depressed price, no longer owns any part of the corporation and
> would derive no benefit from a corporate recovery. Under these
> circumstances, courts have permitted the former shareholder to sue
> the wrongdoers in his or her own name.

Vincel v. White Motor Corp., 521 F.2d 1113, 1119 (2d Cir. 1975).

9

Mr. Venigalla is a former shareholder who sold his shares at a depressed price. As a former shareholder, he cannot bring a derivative action on behalf of the corporation. <u>Bernstein v.Somekh</u>, 452 F. Supp. 1373, 1374 (S.D.N.Y. 1978)(holding a former shareholder has no standing to bring a shareholder's derivative suit); 7C *Federal Practice and Procedure Civil* §1826 (3d ed. April 2022 update)("Plaintiff must be a shareholder at time of suit"). The law disfavors leaving former shareholders without a remedy. For this reason, which the Motion ignores, its standing argument should be rejected.

## VII.    The FAC Alleges a Proper RICO Enterprise

The elements of a RICO claim are "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." <u>DeFalco v. Bernas</u>, 244 F.3d 286, 306 (2d Cir. 2001). An enterprise is defined by the RICO statute as to include legal entities including corporations as well as "any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). The Supreme Court has held an association-in-fact enterprise must have at least three structural features: "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." <u>Boyle v. United States</u>, 556 U.S. 938, 944, 129 S. Ct. 2237, 2243, 173 L. Ed. 2d 1265 (2009). Courts in this Circuit have concluded that "the pleading requirements for an association-in-fact enterprise are relatively low." <u>City of New York v. Tavares</u>, No. 15CV5089AMDST, 2016 WL 7912006, at *4 (E.D.N.Y. Dec. 23, 2016), *report and recommendation adopted sub nom.* <u>City of New York v. Khashman</u>, No. 15CIV5089AMDST, 2017 WL 325250 (E.D.N.Y. Jan. 20, 2017).

The FAC identifies an association-in-fact enterprise of Lenox and Andrea Drug. FAC at ¶40. The common purpose is "to carry out the 2314 Violations [the racketeering activity] and for Lenox Pharmacy to illegally use Andrea Drug's license to sell New York State lottery tickets because Lenox did not have a license to do so." FAC at ¶33. This alleges a common purpose: a

close relationship between the two corporations to carry out the goal and that the relationship existed for seven years.  *Id*.

The FAC details the roles of each of the two members of this small association. Specifically, Lenox sold $4 million in New York State lottery tickets using the lottery license issued to Andrea Drug.  *Id*. at ¶12.  This was illegal and was done because Lenox Terrace Pharmacy did not have a lottery license.  *Id*. at ¶33.  Those allegations alone show a common purpose: the desire by each of the two pharmacies to help Lenox earn substantial revenues by illegally using Andrea Drug's lottery license.

Moreover, both entities were benefitting from this arrangement.  Lenox earned $4 million, and Andrea Drug's owners, the Kurzweils, received kickbacks.  *Id*. at ¶22.  The actions taken and intent of each entity is clear.  Nothing further is required to show a "common purpose."  *See, e.g.,* Google LLC v. Starovikov, No. 1:21-CV-10260-DLC, 2021 WL 6754263, at *3 (S.D.N.Y. Dec. 16, 2021)("The Defendants share a common purpose to spread malware to build a botnet that is deployed for numerous criminal schemes for profit. Defendants work together to accomplish this purpose, each playing a role as described above"); *see also* Mayfield v. Asia Funding, Inc., 95 F. Supp 3d 685, 699-700 (S.D.N.Y. 2015) (concluding that the members of an enterprise had a common purpose).

The Motion alleges there is no common purpose.  Rather it portrays the enterprise as being a "naked assertion" lacking factual detail similar to that alleged in D. Penguin Bros. Ltd. v. City National Bank, 587 Fed. Appx. 663, 667-68 (2d Cir. 2014).  Motion at p.21.  This is incorrect as the allegations made in D. Penguin were so sparse that the involvement of each member in the scheme was not stated and there was no clear coordination among all of the

members of the enterprise.  Therefore, this argument should be rejected, and the enterprise as defined in the FAC, upheld.

## VIII.    Alternatively, No RICO Enterprise is Required

Even if the Court were to find that the RICO enterprise is deficient, dismissal is not required.  Mr. Venigalla would certainly request the opportunity to further amend his complaint to remedy any such deficiency.  However, no RICO enterprise is required in cases brought pursuant to 18 U.S.C. §1962(d), for conspiracy. *See* United States v. Applins, 637 F.3d 59, 75 (2d Cir. 2011)( "We accordingly conclude that *Salinas* counsels that the establishment of an enterprise is not an element of the RICO conspiracy offense."); *see also* New York Dist. Council of Carpenters Pension Fund v. Forde, 939 F. Supp. 2d 268, 283 (S.D.N.Y. 2013) ("However, as discussed above, under *Salinas,* to plead a conspiracy RICO claim, the element of an enterprise is not required").  Thus, this case can proceed even without a RICO enterprise.

## IX.    The FAC is Subject to the Fed. R. Civ. P. 8, not Rule 9(b) Pleading Standard

The Motion contends that the allegations of the FAC do not conform to the heightened pleading standard of Fed. R. Civ. P. 9(b).  *See* Motion at pp. 22-24.  However, Rule 9(b) only applies to allegations of fraud, not the other elements of a RICO claim.  *See* D. Penguin Bros. v. City Nat. Bank, 587 F. App'x 663, 666 (2d Cir. 2014)("for other elements of a RICO claim-such as non-fraud predicate acts or, as relevant here, the existence of an enterprise-a plaintiff's complaint need satisfy only the 'short and plain statement' standard of Rule 8(a)").

Specifically, the Motion objects to the phrase "[t]hrough a series of wire transfers and/or telephone call[s]" because it supposedly must specify whether the money was sent by one medium or the other.  Motion at p. 23.  (Presumably the Motion is referencing ¶21 of the FAC, but it does not state which paragraph it believes is inadequate).  But the predicate act alleged is 18 U.S.C. §2314, theft of money, *not* fraud.  Mr. Venigalla does not have the precise information

sought. He is not required to plead that degree of specificity under Rule 8. And the Motion fails to cite any authority to the contrary. Accordingly, this argument must be rejected.

## X.    Conclusion

In conclusion, the Motion has failed to prove that the FAC does not state a valid RICO claim. Nor does it demonstrate that Mr. Venigalla lacks standing to bring it. It should be denied in all respects.

Dated: September 28, 2022                     Respectfully Submitted,

Chicago, Illinois                             */s/ Howard W. Foster*

                                              Howard W. Foster *pro hac vice*
                                              IL Bar No. 6201218
                                              Foster P.C.
                                              10 South Riverside Plaza, Suite 875
                                              Chicago, Illinois 60606
                                              Email:       HFoster@fosterpc.com
                                              Telephone:   (312) 726-1600